## GILMANTON *v.* HAM.

Objections to the regularity of proceedings, or to the competency of a tribunal having general jurisdiction of the subject, will be considered as waived, unless shown to have been taken at the earliest practicable moment after the facts on which they rest become known to the party taking them.

In prosecutions for bastardy, the child whose paternity is sought to be established, may properly be exhibited to the jury; and its appearance, complexion and features are legitimate subjects for comment by counsel, in connection with the testimony of witnesses in the case.

A verdict will not be set aside because a juror has privately taken, in an ante-room, apart from and without the knowledge of his fellows, as a medicine, for the relief of a disease under which he was manifestly laboring, a small quantity of spirituous liquor, during the deliberations of the jury.

COMPLAINT under the bastardy act. The respondent, when brought before the magistrate upon the original warrant, made no objections, nor any motion to quash or dismiss, but gave bond, according to the order of the magistrate, for his appearance at the Court of Common Pleas, at the September term, 1856, which was the next term following his arrest. The action was duly entered in the Common Pleas at that term, and the respondent then appeared and answered to the action without objection, and the case was continued to the following term. At that term the respondent appeared, and moved the court that the action be quashed and dismissed, for the following reasons:

1. Because the complaint was made and sworn to before one justice of the peace, and the warrant was issued by another.

2. Because the magistrate who received the complaint, and the magistrate who issued the warrant, and before whom the respondent was brought and held for his appearance at the Common Pleas, were both citizens of the town

of Gilmanton, and as such were interested in the event of the suit.

The court overruled the motions, the respondent excepted, and the case proceeded to trial.

The jury returned a verdict that the respondent was chargeable, and an appeal was thereupon taken to this court.

Upon the trial here, at this term, the same exceptions were taken to the original proceedings as were taken in the Common Pleas, and they were overruled.

In the course of the trial the alleged bastard was brought into court before the jury, and the mother testified that the respondent was the father of the child then before the jury. She also testified that the child then in the view of the jury was the bastard of which she had been delivered, and that it was begotten by the respondent.

In the argument of the cause, the counsel for the town called the attention of the jury to the resemblance which he contended existed between the respondent and the child. This was objected to by the counsel for the respondent, upon the ground that the child had not been introduced to the jury as evidence in the case. The court overruled the objection, and the respondent excepted.

The jury returned a verdict for the town; and the respondent moved to set the same aside for the reasons stated in the preceding exceptions, and also for alleged misconduct of the jury, as follows: After the case was committed to the jury, and while they had the same under considera tion, one of the jurors, who was not in the habit of using spirituous liquors, was taken with the diarrhœa, and was in consequence obliged to leave the jury-room several times. On some previous occasions, when similarly attacked, his physician had prescribed for him brandy and water, and sugar, which had relieved him. At one of the times when he left the jury-room he informed the officer who had charge of the jury, what his difficulty was, and requested

him to procure for him some brandy and sugar, and water. The officer procured about one half of a glass in all, and subsequently, when the juror was obliged to leave the room, he drank it in the ante-room where the officer was. He informed the officer that his physician had prescribed this as a remedy. Neither the officer nor any one else held any conversation with the juror out of the jury-room, and no spirit was taken into the jury-room. The juror had made up his mind as to the verdict before this transaction, and it was not changed.

*Eastman, Moody* and *Whipple,* for the defendant.

*Stevens & Vaughan,* for the plaintiff.

FOWLER, J.　By the provisions of the 68th chapter of the Revised Statutes, [Comp. Laws 162,] preliminary proceedings to secure the maintenance of bastard children may be instituted before any justice of the peace in the State, and the preliminary examination may be had before any justice of the peace for the county wherein the alleged offence is charged to have been committed, or in which the putative father may reside. The objections now taken to the original proceedings before the magistrates are not that they had not general jurisdiction by law of the subject matters on which they severally acted, but that their action was irregular and unauthorized, under the peculiar circumstances of the present case, and that they were disqualified to act by reason of their being citizens of Gilmanton, and so interested to save that town harmless from the costs to which it would have been liable in the event of the failure of the prosecution.

The first objection taken must have been apparent on the face of the proceedings, and the second must almost necessarily have been known to the defendant and his counsel, at the time of the preliminary examination. Yet

no suggestion of any irregularity or disqualification on the part of the magistrates, or either of them, was made at that examination. The defendant gave bond for his appearance at the next term of the Court of Common Pleas, according to order, thus distinctly recognizing the authority of the examining magistrate. At the first term of the Common Pleas he appeared and answered to the action, without making any objection, thereby assenting, by implication at least, to the regularity and validity of the proceedings in that tribunal. And it is fairly to be inferred that at the same time he must have furnished a new bond in compliance with the order of the Common Pleas, since it was clearly the duty of that court, under the interpretation long since given to that statute, to order a new bond to be given. *Dunbarton* v. *Palfrey*, 27 N. H. (7 Fost.) 171.

With these facts, necessary implications and inferences, before us, the objections taken at the second term of the Common Pleas, and renewed and insisted upon at the trial in the Supreme Court, seem to fall substantially within the principle recognized by this court in *Warren* v. *Glynn*, 37 N. H. (6 Fogg) 340, which was, that in general where jurisdiction of the subject matter of a proceeding, or authority to act, exists in a tribunal, and the only objection to its exercise is one intended for the benefit and protection of the party complaining thereof, such objection must be taken at the earliest practicable opportunity after the party or his counsel are aware of its existence, or it will be regarded as waived by the omission or neglect to urge it seasonably. It was also holden in that case that a party, cognizant in the earlier stages of a proceeding, before a tribunal otherwise competent, of an objection that might have been fatal to the validity thereof, could not be permitted to lie by and take the chances of a favorable result, and, after an adverse one had been reached, avail himself of that objection to avoid its conse-

quences ; so that, where the magistrate before whom the complaint was made and the preliminary examination had in a prosecution by a town for bastardy, was a resident citizen and tax-payer of the complainant town, and this fact was known to the defendant and his counsel at the time of the preliminary examination, but they designedly omitted to make any objection on that account until after various proceedings in courts of competent authority, having jurisdiction of the cause, it was then too late to insist upon the objection, and it must be considered to have been waived by the neglect to urge it seasonably.

The only substantial difference between the facts in *Warren* v. *Glynn* and those of the present case, seems to be that there it appeared affirmatively that the defendant and his counsel had knowledge of the facts on which the objection afterwards taken rested, at the date of the previous proceedings, while here it is not alleged or shown that they did not have such knowledge; leaving the fair and necessary presumption, as we think, under the circumstances of the case, that they must have had it. Where an objection to the validity of proceedings is apparent on the face of the papers, or of such a nature that it is hardly possible it should not have been known to the party and his counsel at the period of the earlier proceedings, in the absence of satisfactory proof that the objection was taken at the earliest practicable opportunity after it was known to the party or his counsel, we think it must be holden to have been waived by neglect to take it seasonably, precisely as if it were shown affirmatively to have been known and purposely omitted to be urged.

We are, therefore, of opinion that both the objections taken to the validity of the preliminary proceedings before the magistrate were rightly overruled.

We are unable to discover any well founded objection to the course of argument pursued by the plaintiff's counsel, to which exception was taken. The practice of bring-

ing before the jury, on trials for bastardy, the child whose paternity is sought to be established, when living, has been almost universal in this State, from the earliest recollection of the oldest practitioners, and we are not informed that any objection was ever made to it, as there does not seem to have been in the present instance. The paternity of the child was the question in controversy; the child itself was, therefore, in some respects, the subject matter of the litigation, and as such might properly be exhibited to and viewed by the jury, to enable them to judge from its appearance, complexion, and features, whether any inference could legitimately be drawn therefrom as to its paternity. In her examination as a witness the mother called the attention of the jury to the child then before them, as the offspring of the illicit intercourse between herself and the defendant. The child thus became inseparably associated in the minds of the jurors with the testimony they had heard; they could hardly consider and weigh the one without reference to the other. Nor can we readily conceive how the plaintiff's counsel could well argue the credibility of the mother's testimony without some allusion to the child, with which it was associated and upon which it in some sort depended. The exhibition and identification of the child were incidents of her testimony not to be passed over in silence. If the child were referred to at all, its general appearance, its complexion and features might properly be commented upon; and we think, under the well established physiological law that like begets like, and that generally there is a resemblance, more or less strong and striking, between the parent and his child, it was a fair matter of argument before the jury by the counsel on both sides, whether or not there had been anything in the complexion, appearance and features of the child which the witness had produced and identified before them, tending to indicate its other parent. The counsel had a right to argue all the evidence, and its inci-

dents as well; and among those incidents were the production and identification of the child, and its complexion, appearance and features, as observed by the jury, and by them compared with those of the defendant. Where the jury may find from the evidence, however slight it may be, and however improbable such a result may be, that the state of facts is such as contended for, the court cannot restrain counsel in arguing upon such possible result. *Logan* v. *Monroe,* 7 Shep. 257.

We see no sufficient cause for setting aside the verdict, in the conduct of the juror in drinking a small quantity of brandy, which, upon the evidence before us, he must be holden to have taken only and strictly as a medicine, previously prescribed by his physician, as a remedy for the disease under which he was manifestly laboring at the time, and not as a beverage. It was taken by him alone, apart from and without the knowledge of any of his fellows, in good faith, as a remedial agent for a serious and troublesome malady. The facts found by the case do not seem to us to differ substantially in effect from what they would have been if the juror had carried in his pocket a vial of medicine for the relief of the difficulty under which he was suffering, and had taken a dose of it on one of the numerous occasions when he was obliged, as the consequence of his illness, to leave the jury-room. His disease was real and manifest, and not feigned; the juror was not in the habit of using spirituous liquors; he requested the officer to obtain the small quantity of brandy for him, as the medicine prescribed by his physician for the disease under which he was palpably suffering; he drank it privately as a medicine, and not as a beverage, after his mind was made up in the case; and it is impossible to conceive how, under the circumstances, the defendant can have suffered from the influence of the liquor upon the judgment of the juror, or what injurious influence can be exerted on the community as the result of such an occurrence.

There would not seem to have been anything in the conduct of the juror, as disclosed by the case, which can rightfully be regarded as imprudent or injudicious, much less deserving the severe reprehension and rebuke which would be involved in setting aside the verdict on that account.

With these views of the invalidity of the various objections urged against the proceedings in the present case, all the exceptions taken must be overruled, and judgment be rendered on the verdict for the plaintiff.

*Exceptions overruled, and judgment for the plaintiff.*